```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
YONG KUI CHEN, ZU GUANG ZHU,         :   10 Civ. 7254 (JCF)
HAO CHEN, SHUI BING ZHU, GUO REN     :
HUANG and YOU HUANG ZHU, on behalf   :   M E M O R A N D U M
of themselves and others similarly   :   A N D   O R D E R
situated,                            :
                Plaintiffs,          :
                                     :
     - against -                     :
                                     :
WAI? CAFÉ INC. and WAI YIN CHAN,     :
                                     :
                Defendants.          :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```



Accusing an attorney of perpetrating a fraud on the court is serious business. Here, the defendants, Wai? Café Inc. and Wai Yin Chan, charge plaintiffs' attorney, C.K. Lee, with lying to the court when he asserted that certain documents, including a purported agreement settling the plaintiffs' claims, had not been produced in discovery and were therefore inadmissible at trial.[1] In an ostensibly unrelated motion, Mr. Lee asks to withdraw from representing the plaintiffs. Although the defendants' arguments raise questions about plaintiffs' counsel's professional competence, they do not establish by clear and convincing evidence

---

[1] The parties consented to my jurisdiction for all purposes pursuant at 28 U.S.C. § 636(c). <u>Yong Kui Chen v. Wai? Café Inc.</u>, No. 10 Civ. 7254, 2012 WL 997004, at *1 (S.D.N.Y. March 26, 2012), <u>vacated in part on other grounds sub nom. Yong Kui Chen v. Wai Yin Chan</u>, 615 F. App'x 10 (2d Cir. 2015).

1

that Mr. Lee intentionally lied to the Court; the defendants' motion is therefore denied.  Plaintiffs' counsel's motion is granted.

Background

The complaint in this action, filed in September 2010, alleges that the defendants violated the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL") by failing to pay the applicable minimum wage, overtime wage, and spread-of-hours premium to the plaintiffs, who were employed as delivery persons at the restaurant Wai? Café.  (Complaint, ¶¶ 47-68).  In response, the defendants asserted that in February 2010 the defendants and five of the plaintiffs[2] entered into a contract under which the defendants promised (1) to "make payments . . . to [the plaintiffs] relating to their delivery services," (2) to pay the plaintiffs $10,000 to be divided among them, (3) to make the plaintiffs part owners of the restaurant, and (4) to give them to 30% of the proceeds when the restaurant was sold.  (Answer, ¶¶ 40-43, 45).

---

[2] The defendants claimed that plaintiff Yong Kui Chen was "unknown" to them and had never been employed at the restaurant. (Answer, ¶¶ 36-37).  Yong Kui Chen did not appear for trial, and he was dismissed from the action.  (Transcript dated Feb. 6 and 7, 2012 ("Tr.") at 6); Yong Kui Chen, 2012 WL 997004, at *1.  In addition, prior to trial Jian Hui Lin was added as a plaintiff. (Tr. at 7-9).  References to "the plaintiffs" in this opinion should therefore be understood to exclude Yong Kui Chen and include Jian Hui Lin.

This agreement served as the basis for three of the defendants' affirmative defenses -- (1) that it established a business venture between the plaintiffs and the defendants, thus affecting the status of their relationship, (2) that it fully compensated the plaintiffs for any damages suffered, and (3) that it constituted an accord and satisfaction -- as well as for a counterclaim alleging that "[i]n consideration for [the plaintiffs] becoming part owners" of the restaurant, they "accepted payment of $10,000," although they had no intention of functioning as part owners and were therefore unjustly enriched.  (Answer, ¶¶ 40-48, 66-68).  The document is also the foundation of the defendants' current motion seeking terminating sanctions.

In June 2011, Perry I. Tischler, the attorney who was then representing the defendants, served on Mr. Lee their initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  (Declaration of Perry I. Tischler dated Oct. 31, 2015 ("Tischler Decl."), ¶ 5; Defendants' Rule 26(a)(1) Initial Disclosures ("Initial Disclosures"), attached to Tischler Decl.).  The first document, two pages long, was identified as "Contract dated February 16, 2010 (written in Chinese)."  (Initial Disclosures, § II(a); Document dated Feb. 16, 2010 ("Purported Contract"), attached to Initial Disclosures).

Approximately seven months later, the parties' joint pre-trial

order listed the defendants' Initial Disclosures among the plaintiffs' expected trial exhibits:

> Defendants' Rule 26[(a)](1) Initial Disclosures, including attachments.[]
>
>   a.   Employee schedules
>
>   b.   Employee compensation reports

(Joint Pretrial Order dated Jan. 11, 2012 ("Pre-Trial Order"), § 6.4).  In addition, the plaintiffs' pre-trial memorandum of law refers to a purported settlement contract, arguing that "[w]hatever documentary evidence [the] [d]efendants believe constitutes a settlement agreement is merely part of, at most, negotiations or discussions of settlement" and should therefore be inadmissible. (Pre-Trial Memorandum of Law ("Pl. Pre-Trial Memo.") at 5).  The plaintiffs further moved <u>in</u> <u>limine</u> to exclude "any evidence of negotiations or discussions regarding settlement" on that same ground, in almost identical language.  (Letter of C.K. Lee dated Jan. 27, 2012 ("Motion <u>In</u> <u>Limine</u>"), at 2).

Shortly before the trial was to begin, Mr. Tischler asked to be relieved as counsel, asserting that Mr. Chan had "indicated . . . that he has no funds available to cover the costs and fees involved with [the firm's] continuing representation."  (Letter of Perry I. Tischler dated January 31, 2012).  After a hearing at which Mr. Chan asserted that he had discharged Mr. Tischler, I

4

granted the application.  (Memorandum Endorsement dated Feb. 2, 2012); Yong Kui Chen, 2012 WL 997004, at *1.

Prior to jury selection, I addressed the plaintiffs' motions in limine.  With respect to the request to exclude evidence of a purported settlement, Mr. Lee stated:

> Well, it's really their issue, your Honor, but they had a contract, it wasn't signed, and I don't know what they planned to do with it. . . .  I just wanted to avoid [Mr. Chan] raising it like in his opening or trying to question the plaintiffs regarding this purported contract for settlement.

(Tr. at 4-5).  I disagreed that the purported agreement constituted inadmissible settlement negotiations, but deferred ruling on any specific exhibits or testimony until offered at trial.  (Tr. at 5-6).  The plaintiffs then moved for a default judgment against the corporate entity, which I granted.  (Tr. at 6); Yong Kui Chen, 2010 WL 997004, at *1.

When Mr. Chan sought to introduce the purported agreement at trial, I asked him to show it to Mr. Lee, and then convened a sidebar to discuss the issue:

> THE COURT:  For starters, in what language is that document?
>
> . . . .
>
> MR. LEE: [] [O]bviously I have strong objections to this document being admitted.  It's not signed.  I actually never received that.  And it's not authenticated.  There's [sic] so many reasons why this document should not be allowed.  It was not provided in

5

>    the evidence list pretrial. . . .
>
>    THE COURT: Mr. Chan, do you wish to be heard on this?
>
>    MR. CHAN: This is what the truth is, and I feel that this should be listed as evidence. That's the important part of evidence.
>
>    . . . .
>
>    THE COURT: . . . . First of all, the contract, so-called, is not admissible; it's unsigned. It should have been turned over during the course of discovery, and it was not. I will not accept it.

(Tr. at 81-82, 84). I further instructed the jury to "disregard any suggestion that [the purported settlement agreement] constitutes a settlement of [the] case." (Tr. at 90).

At the beginning of the second day of trial, Mr. Chan asserted that he wanted to introduce a document purporting to show that the plaintiffs had received "some additional compensations daily." (Tr. at 109). Mr. Lee asked for a side bar and examined the potential evidence:

>    MR. LEE: Your Honor, I've never seen this document. I did not get it in discovery. I did not -- it was not put into the pretrial submissions for evidence. I've never had an opportunity to do discovery on this document to see whether it's relevant or made last night. So this is clearly not admissible, your Honor, and there should be no testimony about any of this stuff.
>
>    THE COURT: Mr. Chan, was that turned over to your attorney prior to trial?
>
>    MR. CHAN: I did turn this over to my lawyer. You can call my lawyer to see if my lawyer turned it over to

6

>him. And also the contract I mentioned yesterday, I turn it over to the lawyer. The first day I think he was lying; he did not tell the truth.
>
>THE COURT: We don't have Mr. Tischler here to make any representations about whether he turned it over. And on the basis of Mr. Lee's representations, I'm not going to admit a document that was not turned over in the course of discovery.

(Tr. at 109-10).

The jury ultimately found "that the plaintiffs had not shown that Wai? Café's annual gross receipts exceeded $500,000" as required by the FLSA, but that the defendants were liable under the NYLL. Yong Kui Chen, 2012 WL 997004, at *1-2.

Mr. Chan appealed the judgment. After appointing counsel for him (the plaintiffs proceeded pro se on appeal), the Second Circuit vacated the judgment in part and remanded the case to this Court.

>[T]aking particular heed of Chan's unexpected pro se status, the district court's refusal to allow Chan to contact his former attorney denied Chan a meaningful opportunity to defend himself against the imposition of discovery sanctions. Accordingly, the case must be remanded with instructions for the district court to conduct a further inquiry into whether Chan produced the contested evidence, as part of his Rule 26(a)(1) disclosures or otherwise. Should the district court determine that the document was never produced, the original judgment, corrected as set forth below, will be reinstated. Should the court determine that Chan in fact provided the settlement agreement to the plaintiffs' counsel, however, the erroneous exclusion of evidence of that agreement from the proceedings below entitles Chan to a new trial.

Yong Kui Chen, 615 F. App'x at 13 (footnote omitted). These

motions followed.

Discussion

    A.    Legal Standard

A court may impose sanctions when a party or its attorney has perpetrated a fraud against it. Bravia Capital Partners Inc. v. Fike, No. 09 Civ. 6375, 2015 WL 1332334, at *3 (S.D.N.Y. March 25, 2015); see also In re Dynex Capital, Inc. Securities Litigation, No. 05 Civ. 1897, 2011 WL 2581755, at *4-5 (S.D.N.Y. April 29, 2011) (addressing whether counsel committed fraud on the court). Fraud on the court "embrace[s] only that species of fraud which does[,] or attempts to, defile the court itself." Passlogix, Inc. v. 2FA Technology, LLC, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (first alteration in original) (quoting Kupferman v. Consolidated Research and Manufacturing Corp., 459 F.2d 1072, 1078 (2d Cir. 1972)). It requires "that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense." Id. at 393 (alteration in original) (quoting McMunn v. Memorial Sloan-Kettering Cancer Center, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002), and collecting cases). Generally, a single misrepresentation does not constitute fraud on the court. Id. at 394. Indeed, "[n]either perjury nor nondisclosure, by

itself, [] amounts to anything more than fraud involving injury to a single litigant." Rybner v. Cannon Design, Inc., No. 95 Civ. 0279, 1996 WL 470668, at *3 (S.D.N.Y. Aug. 20, 1996) (Sotomayor, D.J.) (quoting Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988)). Rather, typical sanctionable conduct occurs "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." Passlogix, 708 F. Supp. 2d at 393 (quoting McMunn, 191 F. Supp. 2d at 445).

Fraud on the court must be shown by clear and convincing evidence, see id. at 394, that is, "evidence that makes the fact to be proved 'highly probable,'" Century Pacific, Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007) (quoting Abernathy-Thomas Engineering Co. v. Pall Corp., 103 F. Supp. 2d 582, 596 (E.D.N.Y. 2000)), aff'd, 354 F. App'x 496 (2d Cir. 2009). Although the evidence may be circumstantial, it may not be "loose, equivocal[,] or contradictory." Id. (quoting Abrahami v. UPC Construction Co., 224 A.D.2d 231, 233, 638 N.Y.S.2d 11, 13 (1st Dep't 1996)). If the movant meets this high standard of proof, the court should consider five factors in determining the appropriate sanction:

> (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a

9

> pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future.

Passlogix, 708 F. Supp. 2d at 394. There are many available sanctions, including corrective jury instructions and imposition of attorneys' fees. In the most egregious cases, the Court may impose the "pungent, rarely used, and conclusive" remedy of dismissal. Rybner, 1996 WL 470668, at *4 (quoting Dodson v. Runyon, 86 F.3d 37, 39 (2d Cir. 1996)).

### B. Fraud on the Court

The defendants contend that Mr. Lee intentionally misled the Court twice: when he asserted that the putative settlement agreement had not been produced during discovery, and when he insisted that the document purportedly showing additional compensation to the plaintiffs was not produced in discovery.

#### 1. Settlement Agreement

Mr. Lee has admitted that the defendants produced the purported settlement agreement with their initial disclosures. (Declaration of C.K. Lee dated Dec. 23, 2015 ("Lee 12/23/15 Decl."), ¶¶ 5-6). The defendants argue that Mr. Lee's demonstrated familiarity with the document establishes that his representation that it was not produced was an intentional misstatement designed to frustrate presentation of the defense. They point primarily to

10

six facts that suggest that Mr. Lee cannot have been ignorant of the fact that the document had been disclosed and therefore must have lied when he represented otherwise:

> (1) the agreement was "invoked in [the] [d]efendants' answer and annexed thereto";
>
> (2) it was produced as part of the defendants' Rule 26(a)(1) disclosures, "as the very first of only five documents";
>
> (3) it was included as one of the plaintiffs' trial exhibits;
>
> (4) it was referenced in the joint pre-trial order;
>
> (5) it was mentioned in the plaintiffs' pre-trial memorandum;
>
> (6) it was invoked in an oral motion <u>in</u> <u>limine</u>.

(Memorandum of Law in Support of Defendants' Motion for Sanctions ("Def. Memo.") at 6; Defendants' Reply in Support of Motion for Sanctions ("Reply") at 1-2 (emphasis omitted)). However, this evidence does not clearly and convincingly establish that Mr. Lee intentionally misled the Court.

First, the defendants have produced no evidence that the agreement was annexed to the answer. To be sure, the answer states that a copy of the document in both its original language and in an English translation are attached to the pleading. (Answer, ¶ 63). However, no such documents are annexed to the answer that appears on the docket. The defendants indicate, instead, that they were included with a paper copy that Mr. Tischler served on Mr. Lee and mailed to the Court. (Def. Memo. at 2). That assertion is

entirely unsupported. The attempted paper filing was stricken from the docket with directions for the pleading to be filed electronically, so the official case docket does not corroborate the defendants' claim. (Rejection of Attempted Paper Filing in ECF Case dated Nov. 15, 2010). And Mr. Tischler stops short of attesting that such documents were actually attached to that attempted filing. (Tischler Decl., ¶ 3). Indeed, he admits that the answer that he attempted to file "was subsequently e-filed" and that the exhibit was not attached. (Tischler Decl., ¶¶ 3-4). What remains of this evidence, then, is the fact that a settlement agreement was referenced in the Answer.

As noted, Mr. Lee concedes that the defendants' initial disclosures include a copy of the subject document. The copy is identified as "Contract dated February 16, 2010 (written in Chinese)." (Initial Disclosures, § II(a)). Mr. Lee cannot read Chinese. (Lee 12/23/15 Decl., ¶ 2). There is no evidence that this document was ever translated into English. And, other than the date, some of the parties' names, and a single reference to "30%" in the document (Purported Contract at 1), there is little to connect the document to the agreement mentioned in the Answer. For example, there is no mention of a $10,000 payment. (Answer ¶¶ 45, 66; Def. Memo. at 2 (describing terms of agreement)). Rather, the only monetary amounts cited are "$3.50" and "$48000," neither of

which clearly relate to the agreement the defendants describe. (Purported Contract at 1-2).

The defendants overstate the facts when they assert that the plaintiffs listed the Purported Contract as one of their trial exhibits and referenced it in the pre-trial order. Both documents, it is true, cite as potential trial exhibits the defendants' "Initial Disclosures." (Index of Plaintiffs' Exhibits ("Index") at 2;[3] Pre-Trial Order, § 6.4). However, they then identify specific attachments -- schedules and compensation reports -- that will be offered in evidence. (Index at 2; Pre-Trial Order, § 6.4). The plaintiffs mention neither the Purported Contract nor any other settlement agreement.

The plaintiffs' pre-trial memorandum argues that evidence of settlement should be excluded. However, it does not identify any specific document that the plaintiffs seek to block. Rather, the relevant sentences read:

> [I]t is clear in this case that no settlement of claims ever occurred since this Court never approved any settlement yet. <u>Whatever documentary evidence [the] [d]efendants believe constitutes a settlement agreement</u> is merely part of, at most, negotiations or discussions of settlement. Therefore, any of [the] [d]efendants' evidence that [the] [d]efendants <u>offered to pay $10,000</u>

---

[3] The docketed version of this documents does not include copies of the actual exhibits, which were redacted for filing. (Index at 3). Nor are the exhibits part of the case file held by the Clerk of Court.

>    to [the] [p]laintiffs . . . or that the two parties once
>    settled the case should be inadmissible . . . .

(Pre-Trial Memorandum of Law at 5 (emphasis added)). This phrasing is not inconsistent with the possibility that the plaintiffs were unfamiliar with the specific document upon which the defendants were planning to rely. Moreover, as we have seen, there is no mention of $10,000 in the Purported Agreement. It is, therefore, not clear that the plaintiffs understood "[w]hatever documentary evidence [the] [d]efendants" might rely on to include the Purported Contract.

The defendants make much of some aspects of Mr. Lee's argument on a motion <u>in limine</u> prior to trial. That argument used language quite similar to the language of the Pre-Trial Memorandum: "[w]hatever documentary evidence [the] [d]efendants believe constitutes a settlement agreement is then merely part of, at most, negotiations or discussions of settlement." (Motion <u>In Limine</u> at 2). In arguing his motion, Mr. Lee acknowledged the existence of a unsigned document purporting to be a settlement agreement. (Tr. at 4-5). The defendants wonder how he could know that the contract was not signed unless he had seen it. (Def. Memo. at 6; Reply at 2). But Mr. Lee attests that, after Mr. Chan spoke of an agreement, the plaintiffs "verbally informed" him that "an unsigned agreement existed." (Lee 12/23/15 Decl., ¶ 4). Further, the

14

defendants note that Mr. Lee did not argue that the unsigned agreement was not produced. However, Mr. Lee admits to confusion about what agreement was being discussed, and the fact that he failed to make that particular argument is somewhat shaky evidence that he knew the document at issue had been produced. (Lee 12/23/15 Decl., ¶ 7).

Mr. Lee's version of events is just plausible enough. When, immediately prior to trial, Mr. Chan offered the document -- written in Chinese, a language plaintiffs' counsel cannot read -- Mr. Lee did not recognize it as something that had been produced with the Initial Disclosures. (Lee 12/23/15 Decl., ¶¶ 5-7). To be sure, the evidence the defendants offer indicates that Mr. Lee's trial preparation leaves much to be desired. Mere incompetence, however, is not fraud on the court.

2.   Additional Compensation Document

There is a more fundamental failure of proof as to this document. The trial transcript establishes that Mr. Chan attempted to introduce a document that reflected "additional compensations daily." (Tr. at 109). It is not disputed that the defendants produced a document titled "Extra Payout Made to Delivery People 2009-2010" with their initial disclosures. (Initial Disclosures, § II.e). But the defendants have not provided any evidence (such as an affidavit from Mr. Chan) that the document included in the

15

initial disclosures is the document sought to be introduced at trial.[4]  Rather, they present merely a representation from their current attorney (who does not purport to have personal knowledge of the relevant facts) that "[t]his evidence was also part of the Rule 26(a)(1) disclosures."  (Def. Memo. at 4).  This would not satisfy the lower preponderance of the evidence standard, and certainly does not meet the clear and convincing standard. Moreover, this single instance of misrepresentation, even if intentional, would not constitute fraud on the court.  See Passlogix, 708 F. Supp. 2d at 393-94 (requiring repeated intentional misrepresentations); see also Shah v. Eclipsys Corp., No. 08 CV 2528, 2010 WL 2710618, at *14 (E.D.N.Y. July 7, 2010) (same).

    C.    Motion to Withdraw

"When considering whether to grant a motion to be relieved as counsel, 'district courts analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding.'"  Leviton Manufacturing Co. v. Fastmac Performance Upgrades, Inc., No. 13 Civ. 01629, 2013 WL 4780045, at *2 (S.D.N.Y. July 8, 2013) (quoting Blue Angel Films, Ltd. v. First Look

---

[4] Indeed, the defendants would have had this same problem with the Purported Contract had Mr. Lee not conceded that the document produced with the Initial Disclosures was the same document that Mr. Chan presented at trial.

Studios, Inc., No. 08 Civ. 6469, 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011)).  "Satisfactory reasons for withdrawal include 'a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client.'"  Farmer v. Hyde Your Eyes Optical, Inc., 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) (quoting Naguib v. Public Health Solutions, No. 12 CV 2561, 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)).

This is Mr. Lee's second application to withdraw.  After a conference at which the plaintiffs in attendance indicated that they wanted Mr. Lee's firm to continue to represent them, I denied the application without prejudice to renewal once it was determined whether a new trial was necessary.  (Order dated Sept. 16, 2015). Given Mr. Lee's concession that the Purported Contract was, in fact, produced during discovery (Lee 12/23/15 Decl., ¶¶ 5-6) and my denial of the defendants' motion for terminating sanctions, a new trial is required.  Yong Kui Chen, 615 F. App'x at 13.[5]

---

[5] The Court of Appeals did not address the fact that the Purported Contract was not offered in an admissible form, that is, in an English translation certified as true and accurate. However, the mandate is clear: if the document was produced during discovery, due process requires a new trial. Yong Kui Chen, 615 F. App'x at 13.  I do not read the decision, however, to undermine the well-established rule that a documents in a foreign language is generally inadmissible unless accompanied by a certified English translation.  See, e.g., Lakah v. UBS AG, 996 F. Supp. 2d 250, 258 (S.D.N.Y. 2014); Kasper Global Collection & Brokers, Inc. v. Global

Plaintiffs' counsel's second application to withdraw asserts that "irreconcilable differences" exist between the plaintiffs and counsel "regarding post-trial litigation and appeal strategy." (Declaration of C.K. Lee dated Dec. 31, 2015 ("Lee 12/31/15 Decl."), ¶ 6). Mr. Lee also states that in April 2014, the plaintiffs consented to the withdrawal, and notes that the Second Circuit relieved his firm as counsel upon his representation that it was not retained for post-trial or appeal work. (Lee 12/31/15 Decl., ¶¶ 6-8). In light of the plaintiffs' prior representation (in September 2015) that they wanted Mr. Lee's firm to remain as counsel, I provided the plaintiffs an opportunity to object to the second application. (Order dated Jan. 4, 2016 ("1/4/16 Order"), at 1). The order was sent to the last known addresses of the six plaintiffs. (1/4/16 Order at 2). Three of those mailings -- to Jian Hui Lin, You Huang Zhu, and Zu Guang Zhu -- were returned as undeliverable. The remaining plaintiffs did not object. Although this suggests that some plaintiffs were not informed of the motion to withdraw and their right to object, the return of those mailings

---

Cabinets & Furniture Manufacturers Inc., 952 F. Supp. 2d 543, 554-55 & n.9 (S.D.N.Y. 2013); In re Advanced Battery Technologies, Inc. Securities Litigation, No. 11 Civ. 2279, 2012 WL 3758085, at *9 (S.D.N.Y. Aug. 29, 2012); City of New York v. Geodata Plus, LLC, 537 F. Supp. 2d 443, 448 n.9 (S.D.N.Y. 2007); Quiroga, S.L. v. Fall River Music, Inc., No. 93 Civ. 3914, 1998 WL 851574, at *2 n.3 (S.D.N.Y. Dec. 7, 1998).

indicates that those plaintiffs have not been in communication with their counsel. See Fischer v. Biman Bangladesh Airlines, No. 96 Civ. 3120, 1997 WL 411446, at *1 (S.D.N.Y. July 18, 1997) ("[L]ack of cooperation by a client with its counsel, including lack of communication, is a sufficient reason for allowing withdrawal."). In light of Mr. Lee's representations and the failure of the plaintiffs to object, the application to withdraw is granted. I will, however, request that the Pro Se Office of the Court attempt to find pro bono counsel to represent the plaintiffs going forward.

Conclusion

For these reasons, the defendants' motion for sanctions (Docket no. 47) is denied. Plaintiffs' counsel's motion to withdraw (Docket no. 51) is granted. The Pro Se Office of the Court is respectfully directed to endeavor to find counsel to represent the plaintiffs pro bono.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       February 19, 2016

Copies transmitted to:

C.K. Lee, Esq.
Anne Seelig, Esq.
Lee Litigation Group, PLLC
30 East 39th Street
2nd Floor
New York, NY 10016
(Via ECF)

Brian D. Netter, Esq.
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006
(via ECF)

Zu Guang Zhu
43 Nostrand Ave., Apt. 3C
Brooklyn, NY 11206-5175
(via U.S. Mail)

Shui Bing Zhu
2 Orchard Street, 3C
New York, NY 10002
(via U.S. Mail)

Hao Chen
818 56th Street, 1st Floor
New York, NY 11220
(via U.S. Mail)

Guo Ren Huang
136 Bowery, Apt. 181
New York, NY 10013
(via U.S. Mail)

You Huang Zhu
125 Lockwood Ave.
Yonkers, NY 10701
(via U.S. Mail)

Jian Hui Lin
52 East Broadway, Rm B35
New York, NY 10002
(via U.S. Mail)